Paul C. Wilson, Judge
Ruth Mickels, Joseph Mickels, Jr., Billy Joe Mickels, Brittany Mickels, and Jennifer Unglesbee (“Appellants”) brought a wrongful death action against Dr. Raman Danrad (“Dr. Danrad”) for negligent failure to diagnose an incurable, terminal brain tumor in Joseph Mickels, Sr. (“Mr. Mickels”). The trial court granted Dr. Danrad’s motion for summary judgment and dismissed Appellants’ petition on the ground that Appellants could not establish Dr. Danrad’s negligence caused Mr. Mick-els’ death so as to be actionable under section 537.080.1.[1] This Court has jurisdiction under article V, section 10, of the Missouri Constitution. The judgment is vacated, and the case is remanded.
Facts
On December 8, 2008, Mr. Mickels sought medical attention after experiencing numbness, blurred vision, and headaches. He underwent a magnetic resonance imaging (“MRI”) procedure. On December 12, 2008, Dr. Danrad reviewed the MRI but made no diagnosis.
On February 17, 2009, Mr. Mickels underwent a CT scan of his brain after arriving at a hospital in an altered mental state. Dr. Danrad again reviewed the results, but this time he diagnosed Mr. Mickels with a brain tumor that was both terminal and incurable. Despite immediate surgery, Mr. Mickels died of this tumor on June 12, 2009.
On June 7, 2012, Appellants filed a wrongful death action against Dr. Danrad. Appellants presented evidence that — even though Mr. Mickels certainly would have died of his brain tumor with or without Dr. Danrad’s alleged negligence — he would not have died on June 12, 2009, had the brain tumor been diagnosed following the initial MRI. Mr. Mickels’ treating oncologist, Dr. Carl Freter, testified:
[The tumor] was incurable when it was found and it would have been incurable at the time ... [of] the original [MRI] ... [however] it is more likely than not that if [the tumor] had been discovered earlier ... [Mr. Mickels] would have lived an additional six months on average.
Dr. Danrad moved for summary judgment on the ground that the Appellants had not pleaded and could not prove facts showing that his alleged negligence resulted in Mr. Mickels’ death as required by section 537.080.1, The trial court agreed, entered judgment dismissing Appellants’ petition, and this appeal followed.
Standard of Review
The trial court’s summary judgment ruling is reviewed de novo. Manner *329 v. Schiermeier, 393 S.W.3d 58, 61-62 (Mo. banc 2013). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 380 (Mo. banc 1993).
Analysis
As alleged, Dr. Danrad’s negligence certainly injured Joseph Mickels, Sr., but it just as certainly did not kill him. Instead, Mr. Mickels died of what all parties characterize as an incurable, terminal brain tumor. Because Mr, Mickels’ death was not caused by Dr. Danrad’s negligence, appellants cannot sue for wrongful death under section 537.080.1. Every state supreme court to address this issue has reached the same conclusion. See, e.g., Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984) (trial court should have directed verdict for defendant in wrongful death case because “a jury could not reasonably find that but for the negligent failure to properly diagnose and treat Mr. Gooding he would not have died”); Cooper v. Sisters of Charity of Cincinnati, Inc., 27 Ohio St.2d 242, 272 N.E.2d 97, 104 (1971) (“In an action for wrongful death, where medical malpractice is alleged as the proximate cause of death, and plaintiffs evidence indicates that a failure to diagnose the injury prevented the patient from an opportunity to be operated on, ... the issue of proximate cause can be submitted to a jury only if there is sufficient evidence showing that with proper diagnosis, treatment and surgery the patient probably would have survived.”) overruled on other grounds by Roberts v. Ohio Permanente Medical Group, Inc., 76 Ohio St.3d 483, 668 N.E.2d 480 (1996); Thompson v. Anderson, 217 Iowa 1186, 252 N.W. 117, 120-21 (1934) (affirming directed verdict in a wrongful death suit brought against a physician for failure to diagnose tetanus when the evidence failed to show any probability that the death of the decedent would not have resulted from tetanus, regardless of any negligence or malpractice on the part of the physician).
But this does not mean that Dr. Danrad’s negligence is not actionable. It is. Section 537.020 provides: “Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death_” § 537.020 (emphasis added). Sections-537.020 and 537.080 are two sides of a single coin. Wollen v. De-Paul Health Center, 828 S.W.2d 681, 685 (Mo. banc 1992) (“survivorship statute and the wrongful death statute are mutually antagonistic”).[2] An action for personal injuries that result in death may only be brought under the latter statute, while actions “other than those resulting in death” may be brought under the former. Here, Dr. Danrad’s alleged negligence did not cause Mr. Mickels’ death, but it surely injured him by depriving him of the opportunity to delay his death for up to six months.[3] Mr. Mickels would have been able to sue Dr. Danrad for this negligence *330 while he lived, and his personal representative can bring that action under section 537.020 after his death.
Dr, Danrad concedes that this is the approach taken in Tappan v. Florida Medical Ctr., Inc., 488 So.2d 630, 631 (Fla.Dist. Ct.App.1986), and Williams v. Bay Hospital, Inc., 471 So.2d 626 (Fla.Dist.Ct.App.1985). In Tappan, even though the evidence showed that “but for” the defendant’s negligence the decedent would have lived six to eight months longer, the court concluded: '
. .that no cause of action exists under Florida’s Wrongful Death Act because of traditional causation principles, which require proof under the but-for test. [Defendant’s] alleged negligence in failing to diagnose the lung cancer was not a cause-in-fact of the death. Mrs. Tap-pan could- not, prove that with proper diagnosis and treatment it was ‘more likely than not’-- that Robert Tappan would have survived.
Tappan, 488 So.2d at 631. Instead, the court'held that -“appellant is entitled to maintain this cause for recovery of such damages as are recoverable in a survivor’s action.... [and] should be given an oppor-. tunity to file a third amended complaint to state a cause of action under the survival statute.” Id.
Similarly, in Williams, the decedent died of lung cancer that allegedly should have been diagnosed earlier but, even if it had been, decedent’s death from this cancer could only have been delayed several months and not prevented. Williams, 471 So.2d at 628. Decedent’s personal representative brought a medical malpractice action under the survival statute claiming that “but for” defendant’s negligence decedent would have lived longer before succumbing to cancer. The defendant argued that this was — in reality — a wrongful death claim and, therefore, should be dismissed under Gooding because the defendant’s negligence did not cause decedent’s death.- Williams rejects this argument:
Appellee’s sole reliance on the Gooding case below, and the trial court’s citation of Gooding and Beisel, supra, in the summary final judgment, evidences a misapprehension, we believe, as to the nature of the cause of action before the trial court. The Gooding case dealt with an action for wrongful death. 'Accordingly, the court held in order for the plaintiff to recover it was necessary to prove that the death of the decedent “more likely than not” resulted from the defendant’s negligence. It seems fairly obvious, however, that where (as here) the cause of action is not based on an allegation that the injury caused death, ■proof that-the injury “more likely than not” caused death cannot • be required ....
, *
[W]e agree with appellee’s strenuous assertions that the medical evideiice relied upon below establishes that its alleged negligence did not “more likely than not” ultimately cause Mrs. Williams’ death. Appellant freely co'ncedes this fact, so that an action for wrongful death cannot be maintained. Nevertheless, appellant is entitled to maintain this cause for recovery- of such damages as aré recoverable in a survivor’s action. See, Martin [v. United Sec. Services, Inc.], supra [314 So.2d 765] at 767 [ (Fla.1975) ]. Whether appellant will be able to prove - that - “more likely than not” appellee’s negligence resulted in pain and. suffering on the part of Mrs. Williams while she lived, and the damages recoverable for this or other aspects, of the claim, are matters yet to be addressed in the trial of this cause.
Id. at 629-30.
Dr. Danrad .claims that Tappan and Williams are inapplicable because they *331 were the product of some unique aspect of Florida’s survival statute that is not present in section 537.020. , This Court disagrees.. The Florida-survival statute applicable in Tappan and Williams provided: “No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law.” Fla. Stat. Ann. § 46.021. This statute, which.has not been amended since-1967, does not differ materially from section 537.020 for present purposes. Accordingly, this Court finds the reasoning and conclusions of Tappan and Williams persuasive.[4]
Allowing the claim for Dr. Danrad’s negligence to proceed as & -wrongful death action rather than a- medical malpractice action that survives under section 537.020 not only is contrary to this Court’s precedent and the language of the wrongful death statute, it could have serious and far-reaching consequences. This new element of proof for wrongful death plaintiffs (i.e., that “but for” the defendant’s negligence the decedent would not have died on the specific time and date) could thwart meritorious claims in the future. A defendant could argue that, even when his or her negligence caused the decedent’s death, some conduct of the decedent (or even a third person) either accelerated or delayed that death and, therefore, that conduct — not the defendant’s negligence— was the “but for” cause of the decedent’s specific date and time of death. The approach taken in Tappan and Williams avoids such unintended consequences by properly characterizing this type of claim as a tort claim that survives because the tortfeasor’s negligence did hot cause the decedent’s death. This approach keeps the question of the time and date of the decedent’s death out of the causation5 analysis and' confines it to the damages analysis where it belongs.
Conclusion
Appellants cannot sue for' wrongful death under section 537.080.1 because Dr. Danrad’s alleged negligence did not cause Mr. Mickels’ death. However, the allegations in the petition do state a cause of action for negligence that would have been actionable under section 537.020 if brought by Mr. Mickels’' personal- representative. Accordingly, the judgment 'below is vacated, and the cáse is remanded. See East v. McMenamy, 266 S.W.2d 728, 732 (Mo.1954) (in “furtherance of justice,” dismissal is inappropriate “unless the appellate court is convinced that the [allegations] are such that a recovery cannot be had”). ■
Breckenridge, C.J., Fischér and Russell, JJ., concur;
Teitelman, J., dissents in separate opinion filed;
Stith and Draper, JJ.; concur in opinion of Teitelman, J,

. All statutory references are to RSMo 2000.

. Section 537.020 is referred to as the "sur-vivorship statute” because causes of action other than those resulting in death are said to "survive” the plaintiff’s demise and may be brought by the plaintiff's personal representative. Care should be taken not to confuse this judicial shorthand with claims for "lost chance of survival” under Wollen, which, coincidentally, "survive” under section 537.020.

. To be clear, Mr. Mickels has no claim for "lost chance of survival” under Wollen because all parties concede he could not have survived his brain tumor regardless of whether Dr. Danrad was negligent in reviewing Mr. Mickels’ first MRI.

. This Court followed similar reasoning and reached a similar- result, in Wollen where the Court held that a lost chance of recovery could not be pursued under the wrongful death statute because cancer — -and not the defendant’s alleged negligence — caused the decedent's death. Instead, Wollen holds that where the defendant's .medical malpractice caused personal injuries (i.e., a lost chance of recovery) but not death, that claim survives the decedent’s death and may be brought by the personal representative under section 537.020. Wollen, 828 S.W.2d at 686.